# United States Court of Appeals for the Federal Circuit

---

**KAREN S. GITHENS,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2010-7129

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-4239, Judge Alan G. Lance, Sr.

---

Decided: April 26, 2012

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

L. MISHA PREHEIM, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of coun-

sel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and TRACEY P. WARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

―――――――――――――――

Before RADER, *Chief Judge*, and NEWMAN and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Ms. Karen S. Githens-Bellas appeals the decision of the Court of Appeals for Veterans Claims ("Veterans Court") that affirmed the Regional Office's ("RO") 1996 denial of total disability based on individual unemployability ("TDIU"). *Githens-Bellas v. Shinseki*, No. 08-4239, at \*1 (CAVC May 12, 2010) ("*Op.*"). Ms. Githens-Bellas believes that the Veterans Court erred when it upheld a finding that the RO did not commit clear and unmistakable error ("CUE"). For lack of jurisdiction, we dismiss.

## I.    FACTUAL HISTORY

Ms. Githens-Bellas served in the U.S. Army from September 1980 to February 1981 and from April 1981 to May 1983. During her service, Ms. Githens-Bellas suffered an injury to her knees and wrist. The RO assigned a 10 percent rating to her left wrist with an effective date of November 12, 1986. In 1987, Ms. Githens-Bellas's right upper arm was injured as a result of the medical care she received from the Department of Veterans Affairs ("VA"). In 1990, her injury to right knee and shoulder were each rated at 20 percent and her left knee at 30 percent. After leaving service, she received disability benefits for the service-related injuries and the injury to her upper arm. In 1996, she was unable to continue working as a bookkeeper.

## II.    PROCEDURAL HISTORY

In August 1996, Ms. Githens-Bellas brought a claim before the VA for TDIU.  A VA examiner diagnosed her with the following service-connected disabilities:  stress fractures of her left and right knees and a contusion of the spinal accessory nerve with wasting of the upper region of her right trapezius muscle and limitation of motion.  She was also diagnosed with non-service-connected disabilities, including lipoma in her lower back, migraine headaches, and anxiety disorder due to chronic pain syndrome.  The Veterans Affairs Regional Office ("RO") rated her service-connected disabilities at 70 percent, but denied a total rating based on unemployability under 38 C.F.R. § 4.16(a) on grounds that her service-connected disabilities did not meet the schedular requirements.[1]  A veteran that has not been rated 100 percent disabled can meet the schedular requirements if the veteran's service connected disabilities fall within the exceptions under § 4.16(a) which provides that:  at least one service-connected disability rated at 60 percent or higher, or the service-connected disabilities add up to at least 70 percent with at least one service-connected disability rated at 40 percent or higher.  *Id.*  Section 4.16(a) also provides that disabilities of "both lower extremities, including the bilateral factor, if applicable" are to be "considered as one disability."  *Id.*

The RO, however, failed to consider Ms. Githens-Bellas's two distinct knee injuries as a single injury.  As a result, the RO based the unemployability

---

[1]    The RO evaluated service connected disabilities as 70 percent, but the record indicates that the correct evaluation should have been rated at 80 percent.  *See Joint Appendix* at 15, 17.

determination on § 4.16(b), which provides that "the rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue." Applying § 4.16(b), the RO found that "[e]ntitlement to individual unemployability is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." *Joint Appendix* at 15. In June 1997, Ms. Githens-Bellas filed a request with the RO to reopen her claim for TDIU. The RO denied her request.

Over six years later, in March 2004, Ms. Githens-Bellas requested that her 1996 rating decision be reviewed on grounds that the RO had committed CUE and sought retroactive benefits with an effective date of January 1, 1996 for TDIU. In November 2004, the RO denied her request for review. Ms. Githens-Bellas filed a Notice of Disagreement with the Board of Veterans' Appeals ("Board") on October 4, 2005. In March 2006, the RO issued a statement of the case denying Ms. Githens-Bellas retroactive benefits for total disability on the basis of the 1996 denial. In April 2006, Ms. Githens-Bellas appealed the RO's determination to the Board. On August 27, 2008, the Board determined that the RO's decision to deny benefits for TDIU did not constitute CUE.

Ms. Githens-Bellas appealed the Board's decision to the Veterans Court. In her appeal, Ms. Githens-Bellas asserted that the RO's miscalculation was CUE, and that this error prevented the VA from assisting her in developing evidence to support her claim for TDIU, which she contended resulted in a manifestly different outcome. During the appeal, the Secretary conceded that the RO

committed error by incorrectly computing Ms. Githens-Bellas's rating under § 4.16(a). The Secretary acknowledged that the RO should have treated Ms. Githens-Bellas's injuries to two lower extremities as one disability that met the 40 percent or higher disability rating pursuant to § 4.16(a)(1). Both parties agreed that because the RO correctly rated her other service-connected disabilities to her wrist and upper right arm as 10 percent and 20 percent respectively, for a total of 30 percent, the RO should have determined therefore that Ms. Githens-Bellas met the requirement under § 4.16(a): she had one rated disability at 40 percent or higher which, when added to the 20 percent and 10 percent ratings, provided a disability rating that met the 70 percent or higher requirement. However, the government asserted that the RO's miscalculation did not constitute CUE.

The Veterans Court agreed with the government and affirmed the Board's finding that the RO's 1996 denial of TDIU did not constitute CUE. The Veterans Court cited to *Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002) (en banc) for the proposition that a breach in the duty to assist cannot constitute CUE. The Veterans Court acknowledged that the RO had erred in computing Ms. Githens-Bellas's schedular disability rating, but determined that the error was harmless because the record showed that the RO had made an unemployability determination that satisfied the requirements for a § 4.16(a) analysis.

This appeal followed.

## III.    JURISDICTION

The jurisdiction of this court to review a decision of the Veterans Court is limited. This court has jurisdiction to review a Veterans Court decision if it addresses (1) the validity of statutes or regulations on which the decision of the Veterans Court depended; (2) issues of interpretation if the Veterans Court elaborated upon the meaning of a statute or regulation and the decision depended on that interpretation; and (3) issues of validity or interpretation raised before the Veterans Court but not decided, if the decision would have been altered by adopting the position that was urged. *See Szemraj v. Principi*, 357 F.3d 1370, 1374 (Fed. Cir. 2004) (quoting *Forshey*, 284 F.3d. 1335, 1338 (Fed. Cir. 2002) (en banc)). We also have jurisdiction to review a decision of the Veterans Court on a rule of law. *See* 38 U.S.C. § 7292(a); *Szemraj,* 357 F.3d at 1374. This court may not review the Veterans Court for an "application of a legal standard to the facts of the particular case to determine whether there has been an error that is essentially factual in nature." *Id.* at 1375 (citing *Lennox v. Principi*, 353 F.3d 941, 946 (Fed. Cir. 2003); *Bailey v. Principi*, 351 F.3d 1381, 1384 (Fed. Cir. 2003); *Gaston v. Shinseki*, 605 F.3d 979, 982 (Fed. Cir. 2010); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002)). We may affirm or, if the decision of the Veterans Court is not in accordance with law, modify or reverse the decision of the Veterans Court or remand the matter, as appropriate. 38 U.S.C. § 7292(e)(1)(2000).

## IV.    DISCUSSION

The sole issue on appeal is whether the Veterans Court's decision is based on an erroneous interpretation of 38 C.F.R. § 4.16(a). Ms. Githens-Bellas argues that the Veterans Court misinterpreted § 4.16(a), and then relied

on the misinterpretation to affirm the Board's determination that the 1996 TDIU denial was not based on CUE.  In support, she cites a statement by the Veterans Court that "it was predominantly her non-service-connected disabilities that prevented her from obtaining employment." *Op.* at 4.  Ms. Githens-Bellas argues that this statement demonstrates that the Veterans Court misinterprets § 4.16(a) as permitting non-service connected disabilities to be considered in TDIU determinations once the § 4.16(a) schedular requirements are met.[2]

---

[2]    The paragraph that includes the statement relied on by appellant provides that:

> In this case, *the RO had to determine whether the appellant's service-connected disabilities prevent her from obtaining employment*.  The Secretary concedes that in 1996, the RO "incorrectly found that [the a]ppellant did not meet the schedul[a]r requirements."  Secretary's Br. at 5. However, after assessing the schedular requirements, *the RO still had to determine whether the service-connected disabilities rendered the claimant unemployable. 38 C.F.R. § 4.16(a)*.  In its 1996 rating decision, the RO stated that "[t]he medical reports show both service connected and non-service-connected disabilities which interfere with employment, with the greater degree of disability being from non-service connected disabilities[.]"  R. at 776.  Thus, the RO's error did not cause a manifestly different outcome in the 1996 decision.  *Even if the RO had correctly found that the appellant's combined service-connected disabilities did meet the schedular requirements, it still would have denied her claim because it*

We disagree that the statement constitutes an interpretation of § 4.16(a). The issue before the Veterans Court was whether the 1996 TDIU determination was based on CUE. There is no indication that issues concerning interpretation of § 4.16(a) were before the Veterans Court. In addition, the Veterans Court's decision does not address the validity, or elaboration of § 4.16(a), or reflect that a different decision would have resulted had the position urged by appellant been adopted. *Forshey*, 284 F.3d at 1349.

Further, when the statement is viewed in the context of the entire decision, in particular the paragraph that contains the statement, it is clear that the Veterans Court was not making a statement of interpretation on § 4.16(a), but rather explaining why "the RO's error did not cause a manifestly different outcome in the 1996 decision." *Op.* at 4.

Indeed, the Veterans Court decision reflects a view of § 4.16(a) that is precisely the same as the view that appellant argues should be adopted by this court. Appellant ignores that the paragraph that contains the statement begins with "[i]n this case, the RO had to determine whether the appellant's *service-connected disabilities* prevent her from obtaining employment." *Id.* In addition,

---

> *was predominantly her non-service-connected disabilities that prevented her from obtaining employment.* Thus, it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" for the Board to conclude that there was no CUE in the September 1996 decision that denied TDIU. Accordingly, the Court will affirm the Board decision.

*Op.* at 4 (emphases added).

when addressing the Secretary's concession that the RO had erred in computing the schedular requirements, the Veterans Court stated "the RO still had to determine whether the service-connected disabilities rendered the claimant unemployable." *Id*. The Veterans Court in a series of cases has consistently interpreted § 4.16(a) to require that only service-connected disabilities may be considered in a § 4.16(a) TDIU analysis.[3]

We have no jurisdiction over an issue of interpretation that does not exist. We conclude that the sentence in the Veterans Court's decision cited by the appellant was a mere statement of the Veterans Court's view on whether the RO's error constituted CUE, and not a statement of interpretation of § 4.16(a). *See, e.g.*, *Conway v. Principi*, 353 F.3d 1369, 1373 (Fed. Cir. 2004) (Lack of jurisdiction existed where the Veterans Court statement that § 5103(a) had not been "properly administered" was not an interpretation of section § 5103(a)). In sum, the Veterans Court decision is silent as to the adoption of a particular interpretation of § 4.16(a). *Ferguson v. Principi*, 273 F.3d 1072, 1075 (Fed. Cir. 2001). Because this appeal does not involve an interpretation of § 4.16(a), we dismiss.

## DISMISSED

Each party shall bear its own costs.

---

[3] *See, e.g., Hermann v. Shinseki,* 2011 WL 2599914, at *2 (Vet. Ct. 2011) ("[A]n award of VA benefits for TDIU is based solely on service-connected disabilities."); *Ruvbal v. Nicholson,* 25 Vet. App. 114 (2007); *Pratt v. Derwinski*, 3 Vet. App. 269, 272 (1992).